UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| 5 STAR INVESTMENT GROUP, LLC, | ) | CASE NO.    16-30078-hcd |
| 5 STAR PORTLAND HOLDINGS, LLC, | ) | |
| 5 STAR INVESTMENT GROUP V, LLC, | ) | SUBSTANTIVELY CONSOLIDATED |
| 5 STAR COMMERICAL, LLC, | ) | CHAPTER 11s |
| 5 STAR INVESTMENT GROUP VII, LLC, | ) | |
| 5 STAR HOLDINGS, LLC, | ) | |
| 5 STAR INVESTMENT GROUP III, LLC, | ) | |
| 5 STAR INDIANA HOLDINGS, LLC, | ) | |
| 5 STAR INVESTMENTGROUP II, LLC, | ) | |
| 5 STAR INVESTMENT GROUP IV, LLC, | ) | |
| and 5 STAR CAPITAL FUND, LLC[1] | ) | |
| Debtors. | ) | |

## TRUSTEE'S PLAN OF
## LIQUIDATION (as IMMATERIALLY MODIFIED)

Douglas R. Adelsperger, the chapter 11 trustee in this case (the "Trustee"), by counsel,

pursuant to 11 U.S.C. § 1121(a), submits the following Trustee's Plan of Liquidation (the

"Plan") as immaterially modified[2] with respect to the substantively-consolidated chapter 11

debtors (the "Debtors").

## INTRODUCTION

This Plan and the accompanying Disclosure Statement were filed by the Trustee, who
was appointed by the United States Trustee and approved by the Court for the purpose of
collecting and overseeing the assets of the Debtors, reviewing claims and financial affairs of the
Debtor companies, and filing an appropriate plan proposing the manner and means for payment
of creditors.

---

[1] The filing companies were  5 Star Investment Group, LLC, 5 Star Portland Holdings, LLC, 5
Star Investment Group V, LLC, 5 Star Commercial, LLC, 5 Star Investment Group VII, LLC, 5 Star
Holdings, LLC, 5 Star Investment Group III, LLC, 5 Star Indiana Holdings, LLC, 5 Star Investment
Group II, LLC, 5 Star Investment Group IV, LLC and 5 Star Capital Fund, LLC (collectively, the
"Debtors") filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the
"Bankruptcy Code").

[2] This Plan contains immaterial modifications pursuant to 11 U.S.C. § 1127(a), correcting
typographical errors and clarifying a few provisions of the plan filed on January 11, 2018 as Docket No.
1116.

Although this Plan is the controlling legal document, the accompanying Disclosure Statement provides important background facts, financial information, estimates and projections, and a general summary of the Plan intended to assist you in making an informed choice about whether to vote to accept the Plan. It is important for you to read both documents.

The Plan is described as a "Plan of Liquidation" because it contemplates sale (or other liquidation) of all assets of the Debtors, and the distribution of proceeds to creditors in accordance with the Bankruptcy Code. Since the Petition Date, the Trustee  and various professionals retained by the Trustee has been engaged in the process of liquidating estate assets, and settling or litigating claims held by the bankruptcy estate.

Unlike some Chapter 11 bankruptcy plans, the Trustee's Plan does not contemplate the continued operation or reorganization of the Debtor companies. Also unlike the situation in many Chapter 11 cases, there are no secured claims against the Debtors held by banks or financial institutions. Rather, the overwhelming majority of claims (in both number and amount) are held by individuals who invested in the various Debtor companies. The Plan and Disclosure Statement pertain to claims against *all* of the eleven (11) related companies that filed bankruptcy petitions on January 25, 2016.[3]

After payment of secured real estate taxes and expenses of administration, the Plan generally proposes that an Initial Distribution of Five Million Dollars ($5,000,000.00) will be made to Investors and other unsecured creditors, with remaining cash on hand reserved for payment of estimated expenses of administration, including professional fees and expenses associated with continued liquidation of assets and prosecution of lawsuits against insiders and others. To the extent the Trustee is able to recover additional assets through the prosecution of avoidance actions, the Plan provides for one or more additional, Subsequent Distributions to be made.

The specific provisions of the Plan are as follows:

## ARTICLE 1

### GENERAL RULES AND DEFINITIONS APPLICABLE TO THE PLAN

### 1.1    Rules of Interpretation, Computation of Time and Governing Law:

For purposes of this document: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine or neutral gender; (b) any reference herein to a contract, lease, instrument, release, indenture or other

---

[3] Although the cases were commenced as individual proceedings by separate companies, after a review of the books of the companies and the manner in which they had been operated as one business with comingled assets and liabilities, the Trustee filed a motion for "substantive consolidation" of all the bankruptcy cases on May 18, 2016, which was approved by the Bankruptcy Court on June 24, 2016.

**Exhibit A**
**2 of 24**

agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been Filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof; (e) unless otherwise states, the words "herein," "hereof" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in § 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form  herein that is not otherwise defined, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules as the case may be.

The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

Except to the extent the Bankruptcy Code or the Bankruptcy Rules apply, and subject to the provisions of any contract, lease, instrument, release, indenture or other agreement or document entered into expressly in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of Indiana, without giving effect to principles of conflicts of law thereof.

## 1.2    Defined Terms:

The following definitions shall apply to capitalized terms and phrases used in the Plan

and Disclosure Statement:

**1.2.1**    "Administrative Expense Claim" means any Claim, including but not limited to claims for compensation of the Trustee and the professionals pursuant to §  330 of the Bankruptcy Code, which is entitled to priority treatment under §§ 507(a)(2) and 503(b) of the Bankruptcy Code.

**1.2.2**    "Allowed Administrative Expense Claim" means an Administrative Expense Claim that has been approved by the Court as to which no timely objection to the allowance thereof has been interposed, or as to which any such objection has been determined by a Final Order of the Court providing for allowance.

**1.2.3**    "Allowed Claim" means any Claim other than an Administrative Expense Claim or Priority Tax Claim, in the amount and classification set forth in a proof of claim filed with the Court within the time fixed by the Court (or in the absence of such filing, as set forth in the Debtor's Schedules filed in the Case, unless the Claim was listed in the schedules as disputed, contingent or unliquidated), as to which no objection to the allowance thereof has been interposed within the applicable period fixed in the Plan or the Confirmation Order, or as to which any such objection has been determined by a Final Order of the Court providing

3

for allowance.  For purposes of this definition, multiple proofs of claim of the same Class filed by a Creditor shall be aggregated and shall constitute a single Claim.

    **1.2.4**  "<u>Allowed Priority Tax Claim</u>" means a Priority Tax Claim that is an Allowed Claim.

    **1.2.5**  "<u>Allowed Unsecured Claim</u>" means an Unsecured Claim that is an Allowed Claim.

    **1.2.6**  "<u>Bankruptcy Causes Of Action</u>" means all turnover, avoidance, preference actions or other causes of action which have been filed, or will be filed in the future, which assert claims pursuant to chapter 5 of the Bankruptcy Code, including §§ 542, 543, 544, 545, 547, 548, 549, 550 and 553 and all causes of action which arise under state or other federal law. Bankruptcy Causes of Action include, but is not limited to, all adversary proceedings commenced by the Trustee prior to Confirmation an all adversary proceedings commenced by the Trustee after Confirmation seeking in whole or in part to recover judgments or subsequent transfers under any theory of recovery contemplated under chapter 5 of the Bankruptcy Code.

    **1.2.7**  "<u>Bankruptcy Code</u>" means Title 11 of the United States Code, 11 U.S.C.  § 101 *et seq*., and any amendments thereof.

    **1.2.8**  "<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the Northern District of Indiana, South Bend Division, conferred with authority over this Chapter 11 Case or the court so authorized with respect to any such proceeding.

    **1.2.9**  "<u>Bankruptcy Rules</u>" means the Federal Rules of Bankruptcy Procedure, including any applicable local rules and general orders of the  District Court or the Bankruptcy Court.

    **1.2.10**  "<u>Bar Date</u>" means the last day for filing proofs of claim in the Case which is February 28, 2017 for all creditors.

    **1.2.11**  "<u>Case</u>" means the substantively-consolidated  chapter 11 bankruptcy case of the Debtor, designated as Case No. 16-30078-hcd, pending before the Bankruptcy Court.

    **1.2.12**  "<u>Cash</u>" means cash and cash equivalents and other readily marketable securities or instruments.

    **1.2.13**  "<u>Cash Reserve</u>" means the reserve funds to be withheld by the Trustee in his reasonable discretion from the Initial Distribution to Unsecured Claims as described in Section 4.2 below for the potential payment of current and estimated real estate taxes and other expenses of administration, statutory quarterly fees assessed in chapter 11 cases pursuant to 28 U.S.C. § 1930, and the Trustee's and the Trustee's professionals' estimated fees and expenses associated with prosecution and recovery of Causes of Action or actions taken in furtherance of the Plan, including but not limited to any Administrative Expense Claims for which an application has been filed but which has not yet become an Allowed Administrative Expense Claim.

**1.2.14**  "Causes of Action" means any and all claims, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses and franchises of any kind or character whatsoever held or acquired by the Debtor or the Trustee in his capacity as the representative of the Estate, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, whether arising before, on or after the Petition Date in contract or in tort, in law or in equity, or under any other theory of law and including the Bankruptcy Causes of Action, including all claims described in Section 6.4 of this Plan.

**1.2.15**  "Claim" means any right to payment from Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, as defined in § 101(5) of the Bankruptcy Code, known or unknown, or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, secured or unsecured, known or unknown.

**1.2.16**  "Claimant" means the Holder of a Claim against the Debtor or the Estate.

**1.2.17**  "Class" means a grouping of substantially similar Claims or equity interests as designated in Article 3 of the Plan, pursuant to §§ 1122(a) and 1123(a)(1) of the Bankruptcy Code.

**1.2.18**  "Confirmation" means the entry of an order by the Bankruptcy Court confirming the Plan at or after hearing pursuant to § 1129 of the Bankruptcy Code.

**1.2.19**  "Confirmation Date" means the date of entry of an order of the Bankruptcy Court confirming the Plan.

**1.2.20**  "Confirmation Order" means the order entered by the Bankruptcy Court confirming the Plan pursuant to the Bankruptcy Code.

**1.2.21**  "Consummation" means completion of all Distributions to be made under the Plan.

**1.2.22**  "Court" means the Bankruptcy Court.

**1.2.23**  "Creditors" means all entities with Claims against the Debtor or the Estate.

**1.2.24**  "Creditors' Committee" means the Unsecured Creditors' Committee appointed pursuant to the *Appointment and Notice of Appointment of Committee of Creditors Holding Unsecured Claims* filed by the United States Trustee on April 21, 2016 (Doc 218) as authorized by § 1102 of the Bankruptcy Code.

**1.2.25**  "Debt" means liability on a Claim.

5

**1.2.26** "Debtor" means the substantively consolidated debtors in this bankruptcy case, pursuant to the Order entered by the Bankruptcy Court on June 24, 2016.

**1.2.27** "Disclosure Statement" means the Trustee's Disclosure Statement as approved by order of the Court.

**1.2.28** "Disputed" means, with respect to a Claim or Equity Interest or any portion thereof that is not an Allowed Claim, and that (a) has not been listed on the Schedules or was listed on the Schedules at zero or marked as unknown, contingent, unliquidated or disputed whether or not the Claim or interest is the subject of a proof of Claim, (b) is the subject of a proof of Claim or Equity Interest that differs in nature, amount, or priority from the Schedules, or (c) is the subject of an objection filed with the Court that has not been withdrawn or overruled by a Final Order of the Court. Upon Confirmation and the occurrence of the Effective Date of the Plan, Claims that have been compromised and settled shall not be subject to dispute or objection by any person or entity for purposes of the Plan and shall be deemed Allowed as set forth in the Plan with regard to the consideration to be received as part of the settlement and compromise.

**1.2.29** "Distribution(s)" means the property (including payments) required by the Plan to be provided to the Holders of Allowed Claims and Equity Interests.

**1.2.30** "Distribution Date" means the date that is sixty (60) days after the Effective Date of the Plan, or should such day fall on a weekend or holiday listed in Bankruptcy Rule 9006, the first business day immediately thereafter.

**1.2.31** "Effective Date" means the date that is fifteen (15) calendar days after the Confirmation Date provided the Court has not entered an order granting a request pursuant to Bankruptcy Rule 7062 to stay the Trustee from complying with the provisions of the Confirmation Order and the Plan due to the pendency of (i) a timely appeal of the Confirmation Order, or (ii) a motion for relief from the Confirmation Order or to alter or amend the Confirmation Order pursuant to Bankruptcy Rules 9023 or 9024, in which event the Effective Date shall be 15 days after the entry of an order terminating such stay.

**1.2.32** "Entity" means any individual, partnership,  corporation, estate other than the Estate, trust, governmental unit, person and the United States Trustee.

**1.2.33** "Estate" means the bankruptcy estate as defined by § 541(a) of the Bankruptcy Code.

**1.2.34** "Equity Interest(s)" means the membership interests in the Debtor and all associated legal, equitable and contractual rights of any Person with respect to equity interests in the Debtor.

**1.2.35** "Equity Interest Holder" means Earl Miller, the holder of the Equity Interests in the Debtor and any other Person who asserts Equity Interests in the Debtor.

**Exhibit A**
**6 of 24**

**1.2.36**  "<u>Executory Contracts</u>" means all contracts and leases of real or personal property existing as of the Petition Date which have not expired, or have been terminated by their own terms, and with respect to which there remain unperformed material obligations by both parties.

**1.2.37**  "<u>Final Decree</u>" means an Order entered pursuant to § 350 of the Bankruptcy Code and Bankruptcy Rule 3022 closing the Case.

**1.2.38**  "<u>Final Order</u>" means an order of the Court that has been entered and either:

    i)   The time for appeal from such entered order has expired with no appeal having been filed timely; or
    ii)  Any appeal that had been filed timely has been dismissed or otherwise finally determined.

**1.2.39**  "<u>Holder</u>" means a Person or Entity holding a Claim or Equity Interest.

**1.2.40**  "<u>Impaired</u>" shall have the meaning provided in § 1124 of the Bankruptcy Code.

**1.2.41**  "<u>Initial Distribution</u>" means the initial distribution, following Confirmation, of Cash in the amount of Five Million Dollars ($5,000,000.00), to be made to Creditors holding Allowed Unsecured Claims,

**1.2.42**  "<u>Investors</u>" means all persons holding Claims, regardless of whether such Claims were scheduled or filed as "secured,"  "unsecured," or "priority,"  arising from direct or indirect loans or investments in any of the Debtor companies, including investments arising through advertisements, any Private Placement Memorandum, or other solicitations by Miller, Gingerich, or others acting on behalf of any of the Debtor companies.

**1.2.43**  "Investor Claims" means all Claims of Investors, regardless of whether such Claims were scheduled or filed as "secured,"  "unsecured," or "priority" Claims.

**1.2.44**  "<u>Lien</u>" shall have the meaning provided by § 101(37) of the Bankruptcy Code.

**1.2.45**  "<u>Litigation Expenses</u>" means court costs, filing fees, witness fees (for fact witnesses and expert witnesses), deposition transcript fees and other expenses incurred by or on behalf of the Trustee or the Trustee's professionals incurred in connection with prosecuting and recovery of Causes of Action.

**1.2.46**  "<u>Person</u>" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, trustee, United States Trustee, estate, unincorporated organization, government, governmental unit (as defined in the Bankruptcy Code), agency, or political subdivision thereof, or other Entity.

**1.2.47**  "<u>Petition Date</u>" means the date on which the Debtor filed its chapter 11 petition with the Clerk of the Court, which is January 25, 2016.

**1.2.48**  "Plan" means this Plan of Liquidation in its present form or as it may be amended, modified or supplemented.

**1.2.49**  "Post petition" means on or after the Petition Date through the Confirmation Date.

**1.2.50**  "Prepetition" means prior to the Petition Date.

**1.2.51**  "Priority Tax Claim" means a Claim entitled to priority treatment pursuant to § 507(a)(8) of the Bankruptcy Code.

**1.2.52**  "*Pro Rata*" means the proportion that the Allowed Claim or Equity Interest in a particular Class bears to the aggregate amount of (a) Allowed Claims or Equity Interest in such Class as of the date of determination, plus (b) Disputed Claims in such Class as of the date of determination in their aggregate face amounts or such other amount: (i) as calculated by the Trustee on or before the date of such Distribution; (ii) as determined by an order of the Bankruptcy Court estimating such Disputed Claim; or (iii) as directed by a Final Order of the Bankruptcy Court.

**1.2.53**  "Property of the Estate" has the meaning provided by § 541 of the Bankruptcy Code.

**1.2.54**  "Rejection Claim" means any Claim of a creditor arising from Debtor's pre-petition default, refusal to assume or rejection of an executory contract or unexpired lease pursuant to §  365 of the Bankruptcy Code.  All Rejection Claims are Unsecured Claims.

**1.2.55**  "Secured Real Estate Tax Claim" means any Claim for real estate taxes secured by a valid, properly perfected lien or security interest in Property of the Estate to the extent provided by §  506(a)(1) of the Bankruptcy Code.

**1.2.56**  "Schedules" mean the schedules of assets and liabilities and statement of financial affairs filed by Debtor as required by § 521 of the Bankruptcy Code and Bankruptcy Rule 1007, including any supplements or amendments thereto filed through and until the Confirmation Date.

**1.2.57**  "Subsequent Distribution" means any distribution by the Trustee of money or property representing Property of the Estate to Creditors holding Allowed Unsecured Claims other than the Initial Distribution.

**1.2.58**  "Trustee" means Douglas R. Adelsperger, the duly appointed chapter 11 trustee for the Debtor.

**1.2.59**  "Unclaimed Property" means any Distributions which are unclaimed One Hundred and Twenty (120) days following the Distribution Date.  Unclaimed Property shall include (a) checks (and the funds represented thereby) which have been returned as undeliverable without a proper forwarding address, (b) funds for checks which have not been paid, (c) checks (and the funds represented thereby) which were not mailed or delivered

8

because of the absence of a proper address with which to mail or deliver such property, and (d) interest on Cash constituting Unclaimed Property.

**1.2.60** "<u>Unsecured Claim</u>" means all claims that are not Administrative Expense Claims, Priority Tax Claims, or Secured Real Estate Tax Claims, including but not limited to, Claims of all Investors, whether or not denominated as "secured," "unsecured" or "priority" claims.

**1.2.61** "<u>Voting Deadline</u>" means the date set forth in an order of the Court by which ballots accepting, rejecting or abstaining from voting on the Plan must be submitted to the Trustee's counsel.

## ARTICLE 2

## CLASSIFICATON OF CLAIMS AND EQUITY INTEREST HOLDERS

**2.1.** As permitted by § 1123(a)(1) of the Bankruptcy Code, all Administrative Expense Claims (including, but not limited to, claims for compensation by the Trustee, the Trustee's counsel and counsel to the Creditors' Committee and Priority Tax Claims) are not "classified" under this Plan, meaning they are not placed in a specific "class" of claims and are not entitled to vote on the Plan.

All other creditors with Claims against the Debtors, as well as holders of ownership interests in the Debtors, are included in one or more of the following Classes:

Class 1 -       All Creditors holding Secured Real Estate Claims for unpaid real estate taxes, including but not limited to Secured Real Estate Claims of the Elkhart County Treasurer and St. Joseph County Treasurer.

Class 2 -       Unsecured Claims, including Claims of all Investors.

Class 3 -       Equity Interests.

## ARTICLE 3

## ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

**3.1    Administrative Expense Claims:** As noted, Administrative Expense Claims are not classified under the Plan, are not impaired, and are not entitled to vote to accept or reject the Plan.

Administrative Expense Claims shall be paid in full upon the later of:  (a) 15 days after the Effective Date of the Plan, or (b) seven days following the date such Administrative Expense Claim first becomes an Allowed Administrative Expense Claim, *whichever is later.*

All applications requesting allowance and payment of Administrative Expense Claims

which have not been granted pursuant to a Final Order of the Bankruptcy Court must be filed no later than the Effective Date as defined above; provided however, that the Trustee and the Trustee's counsel may, on or before the Effective Date, file a request for allowance and payment of interim compensation for services performed prior to the Effective Date, and may thereafter file a request for approval of all compensation and reimbursement of expenses after the Effective Date but prior to the entry of the Final Decree.

       **3.2**    **Priority Tax Claims:**  Priority Tax Claims also are not classified under the Plan, are not impaired, and are not entitled to vote to accept or reject the Plan.

       Priority Tax Claims shall be paid in full upon the later of: (a) 30 days after the Effective Date of the Plan, or (b) seven days following the date such Priority Tax Claim becomes an Allowed Administrative Expense Claim, *whichever is later*.

**ARTICLE 4**

**CLASSIFACTION AND TREATMENT OF CLAIMS
AND INTERESTS IN THE DEBTOR**

       **4.1**    **Class 1.**  This Class is comprised of all Creditors holding Secured Real Estate Tax Claims for unpaid real estate taxes, including but not limited to Secured Real Estate Tax Claims of the Elkhart County Treasurer and St. Joseph County Treasurer.

       Allowed Secured Real Estate Tax Claims of Class 1 creditors will be paid in full within thirty (30) days of (i) the Effective Date; or (ii) sale of the real estate subject to the tax lien, *whichever is later*.  Holders will retain their liens until paid in full.

       Class 1 Secured Real Estate Tax Claims are unimpaired, and holders are not entitled to vote to accept or reject the Plan.

       **4.2**    **Class 2.**  This Class is comprised of all Creditors holding Unsecured Claims, including but not limited to all Investor Claims, regardless of whether such Claims were scheduled or filed as "secured,"  "unsecured," or "priority."  Holders of Unsecured Claims shall receive *pro rata* distributions from cash collected by the estate in complete and full satisfaction of their claims as follows:

       (i) Allowed Unsecured Claims shall first receive a *Pro Rata* share of the Initial Distribution  of $5,000,000.00 on the Distribution Date; thereafter,

       (ii) On a quarterly basis, beginning in the second quarter following Confirmation, the Trustee shall make a determination regarding whether one or more Subsequent Distributions can be made, taking into account the amount of Cash and Property of the Estate available for distribution to Creditors holding Allowed Unsecured Claims.  If the Trustee determines that a Subsequent Distribution can be made, then the Trustee shall make a Subsequent Distribution consisting of Cash or other Property of the Estate, less the Cash Reserve reasonably anticipated by the Trustee in his discretion for payment of

10

current and estimated real estate taxes and other expenses of administration, statutory quarterly fees assessed in chapter 11 cases pursuant to 28 U.S.C. § 1930, and the Trustee's and the Trustee's professionals' fees and expenses associated with prosecution and recovery of Causes of Action or actions taken in furtherance of the Plan, including but not limited to any Administrative Expense Claims for which an application has been filed but which has not yet become an Allowed Administrative Expense Claim. The timing of the Subsequent Distributions shall be within the discretion of the Trustee. Quarterly beginning in the second quarter following Confirmation, the Trustee shall determine whether further recoveries from Causes of Action and liquidation of any remaining Property of the Estate are likely to be achieved, and if in the Trustee's estimation they are not likely to be achieved, the Trustee shall provide notice to Creditors holding Allowed Unsecured Claims that no Subsequent Distributions or additional Subsequent Distributions, as the case may be, shall be made.   This class is impaired and is entitled to vote to accept or reject the Plan.

(iii) Any alleged liens or mortgages held by Creditors holding Unsecured Claims shall be extinguished.

Class 2 Unsecured Claims are impaired and accordingly holders of Claims in this Class are entitled to vote to accept or reject the Plan.

**4.3    Class 3**:  This Class is comprised of Equity Interests in the Debtors.  On the Effective Date, all pre-petition Equity Interests shall be cancelled and extinguished, and the holders shall not retain any rights thereunder except with respect to distributions as follows: In the event that all Administrative Expense Claims are paid in full, all Secured Real Estate Tax Claims are paid in full, *and* Allowed Unsecured Claims are paid in full, then any remaining Cash or Property of the Estate shall be distributed to the Holders of the Equity Interests, subject to any claims, liens or set-offs in favor of the estate with respect to the Holder of such Equity Interest. Although the Trustee does not anticipate any Distributions to Equity Interests, the Plan provides the mechanism described herein for Distributions to Equity Interests to occur in the unlikely event that all Holders of Claims in Classes 1 and 2 and all Administrative Expense Claims are paid in full.

Class 3 Equity Interest claims are unimpaired, and accordingly this Class is not entitled to vote to accept or reject the Plan.

## ARTICLE 5

## ACCEPTANCE OR REJECTION OF THE PLAN

Acceptance or rejection of the Plan is governed by § 1126 of the Bankruptcy Code, and the following provisions shall apply:

**5.1    Voting of Claims.**  Each Holder of an Allowed Claim in an impaired Class shall be entitled to vote to accept or reject this Plan by following the procedures set forth herein and in the Disclosure Statement and any related order or notice.

11

**Exhibit A**
**11 of 24**

     **5.2**     **Acceptance by a Class**.  Consistent with § 1126(c) of the Bankruptcy Code, and except as provided for in § 1126(e) of the Bankruptcy Code, a Class shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Holders of Allowed Claims that have timely and properly voted to accept or reject the Plan.  For purposes of voting, an "Allowed Claim" is a Claim that is not a Disputed Claim five (5) Business Days before the Voting Deadline.

     **5.3**     **Section 1129(b)**.  The Trustee shall utilize the provisions of  §  1129(b) of the Bankruptcy Code to satisfy the requirements for Confirmation of the Plan over the objection, if any, of any impaired Class of Claims or Equity Interests or holder of any Claim not voting in favor of the Plan who is entitled to vote to accept or reject the Plan.

**ARTICLE 6**

**MEANS FOR IMPLEMENTATION OF THE PLAN**

     The Plan shall be implemented as follows:

     **6.1**     **Funding the Plan**.  The Distributions contemplated in Article 4 of the Plan shall be made from the liquidation proceeds on hand and to be recovered from the liquidation of Debtor's assets in sales approved by the Bankruptcy Court and from the recovery of money or other property resulting from the prosecution of Causes of Action, including Bankruptcy Causes of Action.

     **6.2.**     **Section 1129(b)**.  The Trustee seeks confirmation of the Plan over the objections of any impaired Class of Claims or Equity Interests or Holder of any Claim or Equity Interest not voting in favor of the Plan pursuant to § 1129(b) of the Bankruptcy Code.

     **6.3.**     **Authorization to Effectuate the Plan**. The entry of the Confirmation Order shall constitute authorization for the Trustee to take all action necessary and appropriate to consummate and implement the Plan prior to and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to applicable non-bankruptcy law and the Bankruptcy Code, without any requirement of further action by the Trustee or the Debtor. The Confirmation Order shall also authorize the Trustee to execute and deliver any agreements, documents and instruments contemplated by the Plan.

     **6.4.**     **Retention and Liquidation of Property of the Estate** . Except as otherwise provided in the Plan or as authorized by the Bankruptcy Court in a Final Order entered prior to Confirmation, all of the assets, properties and rights of the Debtor of every type and description including the Causes of Action, tangible, intangible, wherever located, and all Property of the Estate shall remain Property of the Estate.  The Trustee shall be entitled to, in his reasonable discretion, liquidate and sell Property of the Estate after Confirmation free and clear of all Liens, mortgages, Claims, rights of setoff, security interests, pledges, encumbrances, adverse rights of

interest, covenants, charges, debts and contractually imposed restrictions, and all such Liens, mortgages, claims, rights of setoff, security interests, pledges, encumbrances, adverse rights of interest, covenants, charges, debts and contractually imposed restrictions shall be extinguished except as specifically provided in this Plan.  All Causes of Action (under any theory of law or equity, including, without limitation, the Code, and in any court or other tribunal including, shall remain Property of the Estate, and the Trustee shall retain the exclusive right to commence and pursue all Causes of Action pursuant to § 1123(b)(3) of the Bankruptcy Code.

Without limiting any of the foregoing, the known Causes of Action include the following:

(a)    Claims against Global Impact Companies, LLC; Bocklund, LLC; and Adam LaFavre for recovery under 11 U.S.C. §§ 547 and 548 of preferences and fraudulent transfers;

(b)    Claims against Southern Equity Group Trust and TC Commercial, LLC for recovery under 11 U.S.C. § 548 of fraudulent transfer of ownership interest in a South Carolina limited liability company which owns Village Apartments of Charlestown in Moncks Corner, South Carolina;

(c)    Claims against Earl Miller seeking recovery of nearly $1.6 million for distributions paid to Miller by insolvent 5 Star companies – most of which was used to buy out Gingerich's ownership interest – and over $2.2 million for alleged pre-petition breach of fiduciary duties, including investments in highly speculative business ventures, and $20 million for alleged breach of fiduciary duties owed to the bankruptcy estate;

(d)    Claims for recovery of fraudulent transfers and turnover against Defendants 3D Holographics Medical Imaging, Inc., 7 Heavens, LLC d/b/a Ecowasher, Associated Countries in Technology International Incubator, Inc., Eco II Ecowash, LLC, Green Resource Homes, Inc., H&H Real Estate Holdings, LLC, Julius Toth, Pedal Wheelchair, LLC, Robert A. Foraker, as Trustee of the Green Resource Homes Financial Trust for the Benefit of Julius Toth, Robert A. Foraker on July 13, 2016;

(e)    Claims under 11 U.S.C. § 548 for recovery of fraudulent transfers from Z-Ministries, Inc., and Joseph J. Zupetz.

(f)    Prosecution of claim for collection of accounts receivable of approximately $330,000 from Timber Hollow apartments;

(g)    Prosecution of claim for collection of accounts receivable of approximately $900,000 from Ashleigh Park apartments.

Furthermore, and without limiting any of the foregoing, the Trustee is entitled to, in the exercise of his reasonable discretion, liquidate, including assigning at a discount from face value, any judgments entered in favor of the Estate in furtherance of the Debtor's obligations pursuant to the Plan.

13

**6.5.     Preservation of All Causes of Action Not Expressly Settled or Released.**
Unless a Cause of Action against a Person is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order, the Trustee on behalf of the Estate reserves such Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action upon or after Confirmation based on the Disclosure Statement, the Plan or the Confirmation Order, except where such Claims or Causes of Action have been waived, relinquished, released, compromised or settled in the Plan or a Final Order. Any Person to whom Debtor has incurred an obligation (whether on account of services, purchase or sale of goods or equipment or otherwise), or who has received services from Debtor or a transfer of money or property of Debtor, or who has transacted business with Debtor, or leased equipment or property from or to Debtor should assume that such obligation, transfer, or transaction may be reviewed by Debtor subsequent to the Effective Date and may, to the extent not theretofore waived, relinquished, released, compromised or settled, be the subject of an action after the Effective Date, whether or not (i) such Person has filed a proof of claim against Debtor in the Case; (ii) such Person's Proof of Claim has been objected to; (iii) such Person's claim was included in the Schedules; or (iv) such Person's scheduled Claim has been objected to by Debtor or the Trustee, or has been identified by Debtor as disputed, contingent, or unliquidated.  Without limiting the foregoing, all rights to prosecute the adversary proceedings which assert Bankruptcy Causes of Action, are expressly reserved, and the Trustee shall be entitled to commence any additional Causes of Action, including recovery of claims against subsequent transferees, and the Trustee is authorized to pursue all remedies available under applicable law, whether state or federal to the fullest extent of such law including the Bankruptcy Code.

**6.6.     Maintenance of Causes of Action.** Pursuant to § 1123(b)(3) of the Bankruptcy Code, the Trustee shall be entitled to the exclusive right, authority and discretion to institute, prosecute, abandon, settle, or compromise, as appropriate, any and all Causes of Action, unless waived, released, or extinguished in this Plan or by Final Order, whether arising before or after the Petition Date, in any court or other tribunal including, without limitation, in an adversary proceeding filed in this Case or a related proceeding.

## ARTICLE 7

## ADDITIONAL PROVISIONS REGARDING DISRIBUTIONS

The following provisions shall apply to ensure that the Trustee can make Distributions pursuant to the Plan:

**7.1.     Objections to Claims**. To the extent not previously done, objections to Claims shall be filed with the Court and served upon each Holder of a Claim to which objection is made on or before the Effective Date or such other time as is set forth in the Confirmation Order.

**7.2.     Resolution of Disputed Claims.**  Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, the Trustee shall have the right to make and file objections to

Claims and shall serve a copy of each objection on the Holder of the Disputed Claim within the time frame set forth in the Plan. All objections shall be litigated to a Final Order which may include an agreed entry of dismissal or settlement, except to the extent the party who raised the objection elects to withdraw any such objection.

7.3.    **Estimation.**  The Trustee, may, at any time, request that the Bankruptcy Court estimate any Claim that is contingent or unliquidated pursuant to applicable law, including, without limitation, § 502(c) of the Bankruptcy Code, regardless of whether the Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to the maximum extent permitted by law as determined by the Bankruptcy Court to estimate any contingent or unliquidated Claim, including during the litigation concerning any objection to any Claim or during the pendency of any appeal relating to any such objection.

Notwithstanding any provision herein to the contrary, a Claim that has been expunged from the Claims Register but that is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent Claim or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim for all purposes under the Plan, including for purposes of distributions, and the Trustee, may elect to pursue additional objections to the ultimate Distribution on such Claim. If the estimated amount constitutes a maximum limitation on such Claim, the Trustee may elect to pursue any § proceedings to object to any ultimate Distribution on account of such Claim. Notwithstanding § 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to § 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has filed a motion requesting the right to seek such reconsideration on or before 21 days after the date on which such Claim is estimated. All of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

7.4.    **Payment to Classes Formerly Containing a Disputed Claim**.  If, on and after the Distribution Date, a Disputed Claim becomes an Allowed Claim and therefore is entitled to payment under this Plan, the Trustee shall distribute payment to such Holder of an Allowed Claim as provided in this Plan on the date of any Subsequent Distribution that is at least thirty (30) days after the date the Claim becomes an Allowed Claim; provided however, such Distribution shall not provide the Holder of a Disputed Claim more than it would have received had it held an Allowed Claim at the time of prior Distributions.  In the event the Trustee determines there are insufficient assets for a Subsequent Distribution, the Trustee may at the time of such determination make payment to such Disputed Claim that becomes an Allowed Claim if funds are available and so long as the Creditor does not receive more than it would have received had it held an Allowed Claim at the time of prior Distributions.

7.5.    **Delivery of Distributions and Undeliverable Distributions.**  Distributions to the Holders of Allowed Claims shall be made at the address of each such Holder as set forth in

the Schedules filed with the Bankruptcy Court unless superseded by the address as set forth on the proof of claim filed by such Holder or other writing notifying the Trustee of a change of address. If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless the Trustee is notified of a new address within sixty (60) days after the date such Distribution is made to the Holder's address as last known by the Trustee. Should such Holder notify the Trustee of its current address within the time frame provided above, the Trustee shall make any previously undelivered Distributions to the Holder's new address, without interest.

In the event that a Holder of a Claim does not notify the Trustee of a new address within sixty (60) days of a Distribution being returned as undeliverable, and the Trustee, after reasonably diligent effort, is unable to find a new address within such time period, all prior Distributions to that Holder returned as undeliverable shall remain Property of the Estate, and no further Distributions to such Holder shall be made.

Any Holder of an Allowed Claim relating to an undeliverable distribution who does not assert such entitlement within the timeframes set forth in this Article shall have its Claim discharged and forever barred as against the Estate, and any obligation to such Holder shall be deemed null and void.

**7.6.** **Time Bar to Cash Payments**. Checks issued by the Trustee with respect to Allowed Claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof. Requests for reissuance of any check shall be made to the Trustee by the Holder of the Allowed Claim to whom such check was originally issued within sixty (60) days after the date the check was originally issued. If a check has not been negotiated within the sixty (60) days from issuance and no request for reissuance was received by the Trustee prior to the expiration of the sixty (60) days, then the Claim that is the subject of the Distribution shall be discharged and forever barred against the Estate, and any obligation to such Holder shall be deemed null and void.

**7.7.** **Professional Fees and Expenses**. Except for the Trustee and the Trustee's counsel, each professional person or firm retained with approval by order of the Bankruptcy Court or requesting compensation in the Case pursuant to §§ 330, 331 or 503(b) of the Bankruptcy Code shall be required to file an application for an allowance of final compensation and reimbursement of expenses in the Case incurred through the Effective Date and which requests a Final Order approving same on or before the Effective Date. The Trustee and the Trustee's counsel may file applications for interim compensation and reimbursement of expenses for services performed prior to the Effective Date, subject to the requirement that the Trustee and the Trustee's counsel later file an application for allowance and payment of additional compensation and reimbursement of expenses prior to the Final Decree.

## ARTICLE 8

## PROCEDURES FOR RESOLVING CLAIMS

**8.** **Resolution of Disputed Claims**. The following procedures shall apply to facilitate resolution of Claims in accordance with this Plan.

**8.1.    Allowance of Claims and Interests.** The Trustee shall  have and shall retain any and all rights and defenses that the Debtor had with respect to any Claim or Equity Interest, except with respect to any Claim or Equity Interest deemed Allowed as of the Effective Date. Except as expressly provided in the Plan or in any Final Order entered in the Case prior to the Effective Date (including the Confirmation Order), no Claim or Equity Interest shall become an Allowed Claim or Equity Interest unless and until such Claim or Equity Interest is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order allowing such Claim, including the Confirmation Order.

**8.2.    Prosecution of Objections to Claims**. The Trustee shall have the authority to file objections to Claims which have not previously become Allowed Claims pursuant to a Final Order of the Bankruptcy Court. The Trustee shall have the exclusive authority to settle, compromise, withdraw, or litigate to judgment objections on behalf of the Estate to any and all such Claims.

**8.3.    Claims Estimation**. On and after the Effective Date, the Trustee, may, at any time, request that the Bankruptcy Court estimate any Claim that is contingent or unliquidated pursuant to applicable law, including, without limitation, § 502(c) of the Bankruptcy Code, regardless of whether the Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to the maximum extent permitted by law as determined by the Bankruptcy Court to estimate any contingent or unliquidated Claim, including during the litigation concerning any objection to any Claim or during the pendency of any appeal relating to any such objection.

Notwithstanding any provision herein to the contrary, a Claim that has been expunged from the Claims Register but that is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent Claim or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim for all purposes under the Plan, including for purposes of distributions, and the Trustee, may elect to pursue additional objections to the ultimate Distribution on such Claim. If the estimated amount constitutes a maximum limitation on such Claim, the Trustee may elect to pursue any § proceedings to object to any ultimate Distribution on account of such Claim. Notwithstanding § 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to § 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has filed a motion requesting the  right to seek such reconsideration on or before 21 days after the date on which such Claim is estimated. All of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

**8.4.    Expungement or Adjustment to Claims Without Objection**. Any Claim that has been paid, satisfied, or superseded may be expunged on the Claims Register by the

Trustee, and any Claim that has been amended may be adjusted thereon by the Trustee without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

     **8.5.**    **Deadline to File Objections to Claims or Interests**.  Any objections to scheduled or timely filed Claims or Equity Interests shall be filed no later than the Effective Date or such other time as is set forth in the Confirmation Order.

     **8.6.**    **Disallowance of Claims.**  To the maximum extent provided by § 502(d) of the Bankruptcy Code, all Claims of any Entity from which property is recoverable by the Trustee under §§ 542, 543, 550,  or 553 of the Bankruptcy Code or that the Trustee alleges is a transferee of  a transfer that is avoidable under §§ 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code  shall be disallowed if (a) the Entity, on the one hand, and the Trustee, as applicable, on  the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code, and (b) such  Entity or transferee has failed to turn over to the Trustee all such money or property set forth in such agreement or Final Order.

     **8.7.**    **Amendments to Claims**.  After Confirmation, a Claim or Equity Interest may not be filed or amended without the authorization of the  Bankruptcy Court pursuant to a Final Order, and any such new or amended Claim or Equity Interest Filed shall be deemed disallowed and  expunged without any further notice to or action, order, or approval of the Bankruptcy Court; provided, that such Holder may amend the Claim or Equity Interest previously filed solely to decrease, but not to increase, the amount, number, or priority  of such Claim or Equity Interest, unless otherwise provided by the Bankruptcy Court.

     **8.8.**    **No Interest on Claims**:  Unless otherwise specifically provided for in the Plan by applicable law  (including, without limitation, § 506(b) of the Bankruptcy Code), or agreed-to by the Trustee, interest shall not accrue or be paid on any Claim, and no Holder of any Claim shall be entitled to interest accruing on and after the Petition Date on account of any Claim. Without limiting the foregoing, interest shall not accrue or be paid on any Claim after the Effective Date.

## ARTICLE 9

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

     **9.**    The Trustee is not aware of any Executory Contracts which have not been rejected, assumed and assigned, or compromised and for which the counterparty to such Executory Contract has a Rejection Claim. To the extent there are Executory Contracts which have not been rejected, assumed and assigned, or compromised, the following provisions apply:

     **9.1.**    **Executory Contracts and Unexpired Leases**.  All Executory Contracts shall be terminated upon Confirmation.  Rejection Claims shall be filed with the Clerk of the Bankruptcy Court, and a copy provided to the Trustee, on or before the Effective Date.

**9.2.** **Rejection Claims Barred**. Any Rejection Claims that are not timely filed pursuant to Article 9.1 of the Plan, shall be forever disallowed and barred. Notwithstanding any provision to the contrary in this Plan, the Trustee shall have 45 days from the date of filing any Rejection Claim to file an objection to such Rejection Claim**.**

## ARTICLE 10

### CONDITIONS PRECEDENT TO THE EFFECTIVE DATE
### AND IMMATERIAL MODIFICATION

**10.** The Effective Date shall not occur until (a) the Bankruptcy Court has entered the Confirmation Order, and (b) the Confirmation Order becomes a Final Order. The Trustee reserves the right to request immaterial modification of the Plan at any time prior to Confirmation pursuant to Rule 3019 of the Bankruptcy Rules.

## ARTICLE 11

### EXCULPATION AND INJUNCTION

**11.** To ensure that the Plan is consummated, the following exculpation and injunction provisions shall be effective on Confirmation:

**11.1.** **Exculpation and Limitation of Liability**. The Trustee, the Creditors' Committee, the members of the Creditors' Committee, each of their respective attorneys and other professionals whose employment was authorized by a Final Order of the Bankruptcy Court, and all employees and agents of any of the foregoing (collectively, the "Exculpated Parties"), shall not have or incur any liability to any Holder of a Claim, Equity Interest or Administrative Expense Claim for any act or omission which occurred or occurs on or after the Petition Date until the Case is closed in connection with, related to, or arising out of the Case, the Plan, the administration of the Plan, the Disclosure Statement, the solicitation of votes related to the Plan, or the property to be distributed under the Plan, including all decisions, actions, inactions, and alleged negligence or misconduct relating thereto except for such acts or omissions which constitute fraud, willful misconduct, intentional misconduct or gross negligence by such Exculpated Party as determined by a Final Order of this Court.

**11.2.** **Exculpation Injunction**. The Confirmation Order shall serve as a permanent injunction against any party seeking to enforce any claim or cause of action against the Exculpated Parties that has been exculpated pursuant to § 10.1 of the Plan.

**11.3.** **Plan Injunction**. Confirmation of the Plan shall operate as an injunction against the commencement or continuation of any act or action to collect, recover, or offset from the Estate or Property of the Estate, any Claim or Equity Interest treated in the Plan or any actions to interfere with or impede the implementation and Consummation of the Plan, except as otherwise expressly permitted by the Plan, the Confirmation Order or by Final Order enforcing the terms of the Plan. The Court shall have jurisdiction to determine and award damages for any violation of

19

such injunction, including compensatory damages, attorney's fees and expenses, and exemplary damages for any willful violation of the injunction contemplated herein.

**11.4.** **Police and Regulatory Power Exception**.  Notwithstanding any language to the contrary contained in this Section 11 or in the Plan and/or Confirmation Order, no provision of the Plan or Confirmation Order shall (i) preclude the any governmental entity from enforcing its police or regulatory powers; or, (ii) enjoin, limit, impair or delay governmental entities from commencing or continuing any Claims, causes of action, proceedings or investigations against any non-debtor person or entity in any forum.

## ARTICLE 12

## BINDING NATURE OF PLAN

**12.** THIS PLAN SHALL BIND ALL HOLDERS OF CLAIMS AGAINST THE DEBTOR AND EQUITY INTERESTS IN THE DEBTOR TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, WHETHER OR NOT SUCH HOLDER (A) WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THIS PLAN, (B) HAS FILED A PROOF OF CLAIM OR INTEREST IN THIS CHAPTER 11 CASE, OR (C) FAILED TO VOTE TO ACCEPT OR REJECT THIS PLAN OR VOTED (OR IS DEEMED TO HAVE VOTED) TO REJECT THIS PLAN.

## ARTICLE 13

## RETENTION OF JURISDICTION

**13.** Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the  Bankruptcy Court shall, after the Effective Date, retain the maximum legally permissible jurisdiction over this  Case and all Entities with respect to all matters related to this Case, the Debtor and this Plan, including jurisdiction to:

**13.1.** Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim, including the resolution of any request for payment of any Administrative Expense Claim, the  resolution of any and all objections to the allowance or priority of any Claim, and the resolution of any and all issues related to the release of Liens upon payment of a Secured Claim;

**13.2.** Grant or deny any applications for allowance of  compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan;

**13.3.** Resolve any matters related to the assumption, assignment or rejection of any Executory Contract to which the Debtor is a party or with respect to which the Debtor may be liable; and  to adjudicate and, if necessary, liquidate, any Claims arising therefrom;

**13.4.** Ensure that Distributions to Holders of Allowed Claims are accomplished

pursuant to the  provisions of this Plan and to resolve any disputes related thereto;

**13.5.** Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other Causes of Action that are pending as of the date hereof or that may be commenced in the future, and grant or deny  any applications involving the Debtor that may be pending on the Effective Date or instituted by the Trustee after the Effective Date; provided, however, that the Trustee reserves the right to commence actions in all other appropriate forums and jurisdictions;

**13.6.** Enter such orders as may be necessary or appropriate to implement or consummate the provisions  of this Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in  connection with this Plan or the Disclosure Statement;

**13.7.** Resolve any cases, controversies, suits or disputes that may arise in connection with the Effective Date, interpretation or enforcement of this Plan or any Entity's obligations incurred in connection with this Plan;

**13.8.** Hear and determine all remaining Causes of Action that are pending as of the Effective Date or that may be commenced after the Effective Date;

**13.9.** Issue additional injunctions and enforce them, enter and implement other orders, or take such other actions as  may be necessary or appropriate to restrain interference by any Entity with the Effective Date or enforcement of this  Plan, except as otherwise provided in this Plan;

**13.10.** Resolve any cases, controversies, suits or disputes with respect to the releases, the  exculpation and other provisions contained in Article 11, and enter such orders or take such others actions as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

**13.11.** Enter and implement such orders, or take such other actions as may be necessary or appropriate, if  the Confirmation Order is modified, stayed, reversed, revoked or vacated; and

**13.12.** Resolve any matters that may arise in connection with or relate to any  contract, instrument, other agreement or document adopted in connection with the Plan, and to  enter orders in connection therewith;

## ARTICLE 14

## MISCELLANEOUS PROVISIONS

**14.1.  Modification of Plan**. Effective as of the date hereof and subject to the limitations and rights contained in this Plan: (1) the Trustee reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or  modify this Plan before the

entry of the Confirmation Order; and (2) after the entry of the Confirmation Order, the Trustee, may, upon order of the Bankruptcy Court, amend or modify this Plan, in accordance with § 1127(b) of the Bankruptcy Code, or remedy any defect or omission, or reconcile any inconsistency in, this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

**14.2.**    **Revocation of Plan**.  The Trustee reserves the right to revoke or withdraw this Plan before the Confirmation Date and to file subsequent chapter 11 plans or amendments to this Plan.  If the Trustee revokes or withdraws this Plan, or if Confirmation or the Effective Date does not occur, then: (1) this Plan shall be null and void in all respects; (2) any settlement or compromise embodied in this Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by this Plan, if any, and any document or agreement executed pursuant hereto, shall be deemed null and void; and (3) nothing contained in this Plan shall (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtor or any other Entity, (b) prejudice the Trustee or any other Entity's rights in any manner, or (c) constitute an admission, acknowledgement, offer or undertaking by the Trustee or any other Entity.

**14.3.**    **Binding Effect of the Plan; No Discharge**    The rights, benefits and obligations of any Entity or Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of the heirs, executors, administrators, successors and/or assigns of such Entity or Person. Because the Plan involves liquidation of all or substantially all assets of the Debtor businesses, which will no longer be operated, there is no "discharge" of debts by the Debtor companies, pursuant to 11 U.S.C. § 341(d)(3).

**14.4.**    **Reservation of Rights**.  Except as expressly set forth herein, including with respect to votes cast on Ballots, this Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order. Neither the filing of this Plan, any statement or provision contained herein, nor the taking of any action by the Debtor or any other Entity with respect to this Plan, shall be, or shall be deemed to be, an admission or waiver of any rights of: (1) the Trustee and the Estate with respect to the Holders of Claims against, or Equity Interests in, the Debtor, or other Entity; or (2) any Holder of a Claim or an Equity Interest, or other Entity, before the Effective Date.

**14.5.**    **Payment of Statutory Fees.**  The Trustee shall pay all fees payable pursuant to § 1930(a) of Title 28 of the United States Code for each quarter (including any fraction thereof) until the Case is closed.

**14.6.**    **§ 1125(e) Good-Faith Compliance**.  The Trustee and the other Exculpated Parties, and each of their respective representatives, shall be deemed to have acted in "good-faith" under § 1125(e) of the Bankruptcy Code in connection with Confirmation and Consummation of the Plan.

**14.7.**    **Further Assurances**.  The Trustee, as applicable, all Holders of Claims receiving Distributions hereunder and all other Entities shall, from time to time, prepare, execute and deliver any agreements or documents, and take any other actions as may be

reasonably necessary or advisable to effectuate the provisions and intent of this Plan or the Confirmation Order.

**14.8.**  **Severability.**  If, before Confirmation, any term or provision hereof is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision  held to be invalid, void or unenforceable, and such term or provision then will be applicable as altered or interpreted;  provided, however, that any such alteration or interpretation must be in form and substance reasonably acceptable to the Trustee and, to the extent such alteration or interpretation affects the rights or treatment of Holders of  Unsecured Claims, the Creditors' Committee or its members, provided  further, however, that the Trustee may seek an expedited hearing before the Bankruptcy Court to address any objection to any such alteration or interpretation of the foregoing.  Notwithstanding any such Final Order, alteration or  interpretation by the Bankruptcy Court, the remainder of the terms and provisions of this Plan shall remain in full  force and effect. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and  enforceable pursuant to its terms.

**14.9.**  **Service of Documents**.  Any pleading, notice or other document required by this Plan to be served on or delivered to the Trustee shall be sent by overnight mail to each of the following individuals:

> Rubin & Levin, P.C.
> Attention:  Deborah Caruso
> 135 N. Pennsylvania St., Suite 1400
> Indianapolis, Indiana 46204
> Facsimile:  (317) 453-8616
> Email:  dcaruso@rubin-levin.net

**14.10.**  **Filing of Additional Documents**.  On or before the Effective Date, the Trustee may file with the Bankruptcy Court all agreements and other  documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

**14.11.**  **Balloting**.  Except as otherwise provided by an order of the Bankruptcy Court, ballots shall be deemed timely cast if an authenticated copy of the ballot is transmitted to counsel for the Trustee in electronic or paper form so that it is received on or before the Voting Deadline.

Respectfully submitted,

Douglas R. Adelsperger as Chapter 11 Trustee in
bankruptcy for the Debtors' estates

*/s/ Douglas R. Adelsperger*
Douglas R. Adelsperger, Chapter 11 Trustee

RUBIN & LEVIN, P.C.,
Counsel to the Trustee

By: */s/Deborah J. Caruso*
      Deborah J. Caruso (Atty. No. 4273-49)
      John C. Hoard  (Atty. No. 8024-49)
      135 N. Pennsylvania St., Suite 1400
      Indianapolis, IN 46204
      (317) 634-0300 /Fax: (317) 453-8619

**Exhibit A**
**24 of 24**